UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

GEORGE WEINTRAUB & SONS, INC.,

                              Petitioner,

        -against-

FIESTA DISTRIBUTORS, INC.,

                              Respondent.

-----------------------------------------------------------------X

JUDGE KEENAN

**07 CIV 7995**

**PETITION**

RECEIVED
SEP 1 2 2007
U.S.D.C. S.D. N.Y.
CASHIERS

The Petitioner, George Weintraub & Sons, Inc. respectfully alleges as follows:

1.      Petitioner, George Weintraub & Sons, Inc. now is, and at all times hereinafter mentioned was, a corporation duly organized and existing under the laws of the State of Delaware, with its principal office in the City, County and State of New York.

2.      Respondent, Fiesta Distributors Inc. now is, and at all times hereinafter mentioned was, a corporation duly organized and existing under the laws of the State of Texas with its principal office in the City of El Paso, State of Texas.

3.      The jurisdiction of this court is invoked under Title 9, United States Code, and particularly Section 9 thereof, and under Title 28, United States Code, Section 1332. The amount in controversy, exclusive of interest and costs exceeds $75,000.00.

129985-1

4.    On September 1, 2005, Petitioner and Respondent entered into a written agreement for the licensing of various products by the Respondent which the Petitioner was authorized to sell (the "Agreement"). A copy of the Agreement is annexed hereto as Exhibit A.

5.    The Agreement evidences a transaction involving interstate commerce as the respondent was authorized to manufacturer and sell various products contained within the Agreement throughout the United States, its territories and possessions, and Puerto Rico.

6.    Article 15 of the Agreement provides for arbitration in the event of a dispute, controversy or claim arising out of or relating to the Agreement, to be held in New York City before the American Arbitration Association.

7.    As the Respondent failed to pay the Minimum Guaranteed Royalty provided for in the Agreement and failed to perform other obligations required by the Agreement, a Demand for Arbitration was served on the Respondent on June 14, 2006. A copy of the Demand is annexed hereto as Exhibit B.

8.    Pursuant to the arbitration clause in the Agreement, and requests of the American Arbitration Association, Steven Skulnik was appointed as the sole Arbitrator.

9.    The American Arbitration Association directed the parties to submit documents in support of their respective positions in lieu of an actual hearing. Steven Skulnik, after reviewing proof submitted on behalf of the Petitioner, and the Respondent having failed to offer or submit any documents or evidence, an award was rendered in writing by the Arbitrator, duly acknowledged, and delivered to the parties herein. A copy of the Award is annexed as Exhibit C.

WHEREFORE, Petitioner moves:

1.    That an Order of this Court be made confirming the award;

2.    That judgment be entered in conformity therewith;

3.    That Petitioner be allowed the costs incurred herein; and

4.    That Petitioner be awarded such other and further relief as may be proper.

Dated: New York, New York
       September 12, 2007

JAFFE, ROSS & LIGHT LLP
Attorneys for Petitioner

By_____

Lawrence Fechner (LF2635)
880 Third Avenue – 15th Floor
New York, New York  10022
(212) 751-1700

129985-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
GEORGE WEINTRAUB & SONS, INC.,

                                        Petitioner,        **AFFIDAVIT**

        -against-

FIESTA DISTRIBUTORS, INC.,

                                        Respondent.


-------------------------------------------------------------------X
        STATE OF NEW JERSEY )
        COUNTY OF _Hudson_  )

        Steven Rosenshein, being duly sworn, deposes and says:

        1.      I am the Chief Financial Officer of George Weintraub & Sons, Inc., Petitioner

herein.

        2.      I am familiar with the facts and circumstances involved in the dispute between

Petitioner and Fiesta Distributors, Inc., Respondent and submit this Affidavit in support of

Petitioner's application to confirm the Arbitrator's Award.

        3.      Petitioner, George Weintraub & Sons, Inc., now is, and at all times herein

mentioned was, a corporation duly organized and existing under the laws of the State of

Delaware, with its principal office in the City, County and State of New York.

        4.      Upon information and belief, Fiesta Distributors, Inc. Respondent, now is, and at

all times herein mentioned was, a corporation duly organized and existing under the laws of the

State of Texas with its principal office in the City of El Paso, State of Texas.

130021-1

5.      The amount of the Arbitration Award, exclusive of interest and costs, exceeds $75,000.00.

6.      Petitioner and Respondent entered into a written agreement on September 1, 2005, (the "Agreement") whereby Petitioner granted to Respondent a license to sell goods under the Andrew Fezza, Ltd. trademark with Minimum Guaranteed Royalty payments and other payments due pursuant to the Agreement. The Agreement sets for the rights and obligations of Petitioner and Respondent in their dealings with each other.

7.      The Agreement contained an arbitration clause which provided that any and all disputes, controversies and claims arising out of or relating to the Agreement must be arbitrated in New York City before the American Arbitration Association. A copy of the Agreement including the arbitration clause is annexed hereto as Exhibit A.

8.      The Agreement involved herein evidences a transaction involving interstate commerce as the merchandise to be sold by Respondent was to be sold within the United States, its territories and possessions, and Puerto Rico.

9.      A dispute arose between Petitioner and Respondent wherein Petitioner claimed that Respondent failed to make the Minimum Guaranteed Royalty payments as well as performing other obligations in accordance with the Agreement.

10.     Pursuant to the aforesaid arbitration clause an Arbitration Proceeding was commenced by Petitioner by serving a Demand for Arbitration on the Respondent on June 14, 2006. A copy of the Demand is annexed hereto as Exhibit B.

11.    Although the Arbitration clause in the Agreement required a panel three (3) arbitrators, the American Arbitration Association sent a letter on July 31, 2006, requesting the parties to consider proceeding with one (1) arbitrator. A copy of that letter is annexed hereto as Exhibit C.

12.    On August 3, 2006, Petitioner, by its counsel responded to the American Arbitration Association, agreeing to waive the requirement for three (3) arbitrators. A copy of that letter is annexed hereto as Exhibit D.

13.    After the American Arbitration Association submitted a list of potential arbitrators, Steven Skulnik was appointed as the sole Arbitrator and a preliminary conference was held on February 14, 2007 by telephone. Petitioner's attorney participated in the conference call and no one participated on behalf of the Respondent.

14.    On February 20, 2007 the American Arbitration Association sent a letter to both Petitioner's counsel and Respondent requiring that Petitioner submit in writing to the Association any documents, statements of facts, briefs and any other submissions on or before March 9, 2007. The Respondent was given until March 30, 2007 to reply. A copy of that letter is annexed hereto as Exhibit E.

15.    As required by the letter dated February 20, 2007, Petitioner submitted an Arbitration Statement, Exhibits and Supporting Affidavit on its behalf. The Respondent failed to submit anything in reply.

16.    On April 10, 2007, after the Arbitrator had completed his study of all the facts, circumstances and proof pertaining to the controversy which had been submitted to him, and had

considered all of the evidence submitted by the claimant, the Arbitrator made an Award in writing duly acknowledged on April 10, 2007.  A copy is annexed hereto as Exhibit F.

17.    No notice of motion to vacate, modify or correct the award has been filed.

WHEREFORE, your deponent requests that an Order be made confirming the Award and directing that judgment be entered thereon, and that Petitioner be allowed the costs of this motion and such other and further relief as may be just and proper.

_____
Steven Rosenshein

Sworn to before me this    8/24/07
_____ of July 2007

NANCY CORREA
ID # 2276968
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 7/25/2011

Exhibit A

AGREEMENT, made as of September 1, 2005, by and among GEORGE WEINTRAUB & SONS, INC., a New York corporation, with offices at 1350 Avenue of the Americas, New York, New York 10019 ("WEINTRAUB") and Fiesta Distributors Inc. a Texas corporation, with offices at 221 N. Kansas Suite 17000 El Paso, Texas 77701.("FDI").

## W I T N E S S E T H :

WHEREAS, WEINTRAUB has entered into a license agreement dated as of September 2, 1997 (as in effect on the date hereof, the "License Agreement") with ANDREW FEZZA, LTD., a Delaware corporation, with offices at 300 Park Avenue, New York, NY 10022 ("AFL") and ANDREW FEZZA, residing at 14 Riverfield Drive, Weston, CT 06883 ("FEZZA") in connection with the design, manufacture, advertising, sale and distribution by WEINTRAUB of certain products, bearing the Trademark (as hereinafter defined); and

WHEREAS, AFL is the sole owner of the Trademarks; and

WHEREAS, WEINTRAUB desires to grant to FDI a sub-license of certain of WEINTRAUB's rights under the License Agreement with respect to the design, manufacture, advertisement, sale and distribution of certain products bearing the Trademark, and FDI wishes to acquire from WEINTRAUB the foregoing sublicense for such products in the United States, on the terms and conditions as set forth herein;

NOW, THEREFORE, in consideration of the premises and mutual covenants set forth herein, the parties agree as follows:

## ARTICLE 1
## DEFINITIONS

When used in this agreement, the following terms shall have the respective meanings set forth below:

1

1.1 "Inventory" shall mean FDI'S inventory of the Sublicensed Products including, without limitation, work in process, finished goods, and any other products or items bearing the Trademark then on hand at the time of the expiration or any termination of this License.

1.2 "License" shall mean the License Agreement as it may be amended by the parties thereto from time to time.

1.3 "Licensed Products" shall mean Products listed in Exhibit 1.9A of the License Agreement bearing the Trademark, as such Products have been approved by AFL pursuant to Article 4 therein for sale by WEINTRAUB (or permitted sublicenses) in the Territory.

1.4 "Minimum Guaranteed Royalty" shall be determined pursuant to Article 7 hereof.

1.5 "Net Sales" shall mean the invoiced amount of the Sublicensed Product sold and delivered by FDI, less (a) actual credits for returns; (b) usual trade discounts and allowances; (c) all sales, use, excise and value-added taxes, if any, collected by FDI from, and payable by, the purchaser of the Sublicensed Products pursuant to applicable law, to the extent such taxes are included on the invoice; (d) shipping costs charged as a separate item.

1.6 "Percentage Royalty" shall mean with respect to Sublicense Products, an amount equal to eight percent (8%) of Net Sales of the Sublicensed Products sold each year.

1.7 "Product Category" shall mean the following the Category of Sublicensed Products: All woven bottoms sold as separates to either Main Floor Pants and/or Jeans Department or to Men's Pant or Jeans Buyer. Category shall not include bottoms sold as coordinates, which are to be sold only as part of an ensemble look that is displayed in coordinated sections of Department Stores and Specialty Stores and is party to another Sublicense currently held under the Product Category for Sportswear.

1.8 "Sublicense" shall mean this sublicense agreement.

2

1.9 "Sublicensed Products" shall mean those items listed in Exhibit 1.9A, bearing the Trademark, sold by FDI pursuant to this Sublicense within the price points set forth on such Exhibit.

1.10      "Term" shall mean the initial term and any renewal terms, if any, of this Sublicense as set forth in Article 3 herein.

1.11      "Territory" shall mean the United States of America, its territories and possessions as well as Puerto Rico.

1.12      "Trademark" shall mean for the purposes of the rights granted under this Sublicense, (i) the name "Andrew Fezza," and/or (ii) "FEZZA by Andrew Fezza," and/or (iii) any phrases such as "designed by Andrew Fezza" which have been approved by AFL pursuant to the License, and/or (iv) any of the above used together or in conjunction with any brand name or mark, design, logo or insignia developed, registered and/or approved by AFL pursuant to the License.

## ARTICLE 2
## GRANT OF SUBLICENSE

2.1 WEINTRAUB hereby grants to FDI and FDI hereby accepts, in accordance with and subject to the terms of the License, the right and license to develop, manufacture or have manufactured, market, sell, distribute and advertise the Sublicensed Products in the Territory. All Sublicensed Products sold hereunder shall bear the Trademark. Notwithstanding the territorial limitations described in this Sublicense, WEINTRAUB hereby grants to FDI the right and license to manufacture or have manufactured the Sublicensed Products in factories wherever located both within and outside the Territory. Any agent's commission with respect to

3

Sublicensed Products payable to Stephen Wayne and Associates USA, Inc. ("WAYNE") shall be the responsibility of WEINTRAUB.

2.2 WEINTRAUB and FDI shall cooperate, at the expense of the other party, in any actions which may be brought by such other party in accordance with the provisions of this Sublicense against any third parties relating to the alleged infringement of the Trademark and that it shall execute any necessary documentation reasonably required to permit any use or disposition of the Trademark as set forth in this Sublicense. Notwithstanding the foregoing, FDI shall not undertake any action relating to the Trademark without WEINTRAUB's and AFL's prior written approv-l, if any action is required against a third-party.

2.3 Either party may apply for any protection allowed by the law of any country within the Territory in relation to the Sublicensed Products, and the styles, models and designs thereof. The protection shall be requested in the name of AFL and the relevant expenses shall be borne by the party who desires to secure such protection. Notwithstanding the foregoing, FDI shall not make any such application without AFL's and WEINTRAUB's prior written approval.

ARTICLE 3
TERM

3.1 (a)    Initial Term:  Subject to the provisions of Article 12 herein, the Term of this Subli-ense shall commence as of the date hereof, and shall continue until February 28, 2009 (the "Initial Term") unless sooner terminated hereunder. The first contract year of this Agreement shall commence on the date hereof and shall end February 28, 2007 (the "First Year"). Each subsequent contract year (each, including the First Year, a "Contract Year") shall commence on the first day following the final day of the previous Contract Year and continue for the following twelve (12) month period.

4

(b) <u>Renewal Term</u>: Provided that FDI is in full compliance with all of the terms and conditions of this Sublicense at the expiration of the Initial Term, FDI shall have the option to renew this Sublicense on the same terms and conditions, except with respect to Minimum Guaranteed Royalties as specified herein, as the Initial Term for an additional three (3) year period (the "Renewal Term," and each 12 month period thereof, beginning the first day following the final day of the Initial Term, also a "Contract Year"), provided that Net Sales, including bookings and sales, are at least $3,500,000 for the twelve (12) month period ending February 28, 2009. Any exercise by FDI of such option to renew must be given to WEINTRAUB in writing no later than September 1, 2008. Minimum sales during each year of the renewal period will be $4,000,000, $4,500,000 and $5,000,000 respectively.

## ARTICLE 4
## <u>PRODUCTION AND QUALITY CONTROL</u>

4.1         The designs, prototypes, samples, production, labels and packaging of the Sublicensed Products shall be at the expense of FDI.

4.2         The contents and workmanship of the Sublicensed Products shall be at all times of the quality appropriate to products similar to the Sublicensed Products. FDI shall consult with AFL and WEINTRAUB with respect to all styles, designs, packaging, contents, workmanship and quality of, and hangtags and marketing materials for, all Sublicensed Products under the Sublicense prior to the manufacture and production thereof. The final sample line (sample garment and swatch line) for each season shall be subject to WEINTRAUB's prior written approval. Within a reasonable time after each sample line is approved, FDI shall, at its

expense, provide WEINTRAUB with models of all styles to be presented to the trade in such season.

4.3    FDI may manufacture the Sublicensed Products itself or arrange for the manufacture of the Sublicensed Products by third parties chosen by FDI, in its sole discretion, provided that FDI shall continue to be responsible to assure the required quality of such Sublicensed Products and compliance with the terms hereof.

4.4    All Sublicensed Products shall be labeled, packaged, and advertised in accordance with all applicable laws and regulations. FDI shall not use and display the Trademark except in such form and manner as are specifically set forth herein or approved in writing by WEINTRAUB and AFL. FDI shall cause to appear on all Sublicensed Products produced hereunder, and on all tags, labels, packing, advertising, promotional and publicity material used in connection therewith such legends, markings and notices as AFL or WEINTRAUB may reasonably request in order to preserve and protect AFL's rights in and to the Trademark. Before using or releasing any such materials, FDI shall submit to AFL and WEINTRAUB, for their written approval, the final format of all proposed advertising, promotional and publicity copy, finished artwork for tags, labels, packing and the like and all printed matter of any kind on which the Trademark appears. Approval once given by AFL and WEINTRAUB shall continue unless the approved material or matter has been materially changed.

4.5    FDI shall not use, or cause or suffer to be used, except for the purposes set forth herein and during the Term, any sketches, designs, prototypes, samples or patterns which may be created by WEINTRAUB under this Sublicense.

6

4.6     WEINTRAUB shall not use, or cause or suffer to be used, except for the purposes set forth herein and during the Term, any sketches, designs, prototypes, samples or patterns which may be created by FDI under this Sublicense.

4.7     Any designs, fabric designs, models, sketches and samples furnished to FDI by WEINTRAUB and/or AFL pursuant to this Agreement shall remain the property of WEINTRAUB and/or AFL, as the case may be, shall not be disclosed or furnished by FDI to any other person, firm o  corporation except for the purposes of this Sublicense, and shall be returned to WEINTRAUB and/or AFL, as the case may be, if possible, after the sales season.

4.8     FDI shall maintain at all times a separate area in its showroom specifically dedicated to the sale of the Sublicensed Products.

4.9     The parties acknowledge the reputation that the Trademark has achieved in the Territory, and consequently agree that sales at full wholesale price by FDI of all Sublicensed Products shall be to quality department and specialty stores chosen by FDI in which Mens Main Floor Classification Products are customarily sold.

4.10     Anything contained herein to the contrary notwithstanding, FDI shall not, without WEITRAUB and/or AFL's authorization in writing only sell any Sublicensed Products to (i) any mass merchant retailers, including, but not limited to, the following stores and those which are substantially similar:  J.C. Penney, Sears,  and Kohl's, or (ii) any discount stores, including, but not limited to, the following stores and those which are substantially similar:  K-Mart, Walmart, Target Stores,  Shopko, Meijers, , Parmido Holding, Fred Meyer. With respect to sales to off price stores, FDI shall not allow such retailers to advertise the Trademark.

4.11     FDI shall adhere to standard seasonal delivery periods.

4.12    All point of sale displays and presentations of the Sublicensed Products in retail stores created by FDI shall be approved by WEINTRAUB.

4.13    WEINTRAUB shall as promptly as reasonably practicable, approve, disapprove or modify all items and material submitted to WEINTRAUB by FDI. Notwithstanding the foregoing, WEINTRAUB and AFL shall be deemed to have approved for use in connection with the manufacture, marketing, sale, distribution, advertising or promotion of Sublicensed Products, as the case may be, any material submitted by FDI for WEINTRAUB and AFL's approval which has not been disapproved in writing within fifteen (15) business days after WEINTRAUB and AFL's receipt thereof. WEINTRAUB shall reasonably promptly inform FDI of the reasons for any rejection or modification of material submitted by FDI.

ARTICLE 5
SALE AND DISTRIBUTION OF SUBLICENSED PRODUCTS

5.1    FDI shall diligently develop, market and maintain in the Territory the market for the Sublicensed Products, and will use its reasonable best efforts to achieve maximum sales of Sublicensed Products, throughout the term of this Agreement. FDI will use its best efforts to maintain quality of Sublicensed Products appropriate to Mens Main Floor Classification Products. In the event FDI ceases the production or sale of Sublicensed Products during the Term of this Sublicense for any season FDI shall not have the right thereafter to produce or sell such Sublicensed Product or to renew with respect to such Sublicensed Product for any Renewal Term. Any such loss of rights by FDI shall not reflect the Minimum Guaranteed Royalties payable for the remaining portion of the Term which shall continue to be paid in full on the payment dates for Minimum Guaranteed Royalties.

8

5.2        FDI may utilize the services of distributors or agents for the marketing, sale, distribution and co-op advertising of the Sublicensed Products in the Territory. FDI shall take any and all actions necessary to ensure that such distributors and agents comply with all applicable terms and conditions of this Sublicense. All of the acts committed by such distributors and agents, except those of malfeasance, shall be deemed to be the acts of FDI and FDI shall be liable for any such distributor's or agent's acts of commission or omission which, if committed by FDI, would constitute a breach with respect to any of the terms and conditions of this Sublicense.

5.3        In connection with the development, design, manufacture, marketing, distribution, advertising and sale of the Sublicensed Products, FDI shall pay FEZZA for any services, including any expenses incurred by FEZZA in connection therewith, provided by FEZZA at FDI's written request.

## ARTICLE 6
## ADVERTISING

6.1        Any advertising of the Trademark for the Sublicensed Products shall be created and controlled by AFL and WEINTRAUB, at its sole discretion.

6.2        FDI may engage in co-op advertising of the Sublicensed Products, at its own expense.

6.3        Any trade advertising or trade shows that FDI wishes to engage in, at its own expense, must be approved by WEINTRAUB in writing.

## ARTICLE 7
## ROYALTIES

9

7.1     Each year of the Term of this License, FDI shall pay to WEINTRAUB (i) a Minimum Guaranteed Royalty, which shall not be refundable in any event, plus (ii) a Percentage Royalty, if applicable. The Minimum Guaranteed Royalty for the First Year shall be $200,000, of which $50,000 shall be paid upon the signing of this Agreement, and the balance shall be paid in equal installments of $37,500 on March 1, 2006, June 1, 2006, September 1, 2006 and December 1, 2006 respectfully. In each Contract Year thereafter, the first month of each quarter Will be March, June, September, and December. The Minimum Guaranteed Royalty for each year thereafter is as follows: $240,000 for the second Contract Year; $280,000 for the third Contract Year. No credit shall be permitted against Minimum Guaranteed Royalties payable in any year on account of Percentage Royalties or Minimum Guaranteed Royalties in any other year, with the exception of the third Contract Year. Minimum Guaranteed Royalties shall not be returnable.

7.2     FDI shall deliver to WEINTRAUB no later than thirty (30) days after the end of each quarter for which an accounting is due under this Agreement, a statement signed by the Chief Financial Officer of FDI and certified by him in his capacity as an officer of FDI as accurate. Each such statement shall indicate by Product Category the amount of Net Sales for the previous quarter, the total gross sales of Sublicensed Products shipped during the period covered by such statement, and a computation of the amount of the Percentage Royalty payable hereunder in respect of Net Sales for such quarter. FDI shall pay to WEINTRAUB the difference between the Percentage Royalty payable for a quarter and the Minimum Guaranteed Royalty for such quarter within thirty (30) days of the end of such quarter.

7.3     FDI agrees to keep accurate books and records covering all transactions relating to this Sublicense, Net Sales and the computation of Percentage Royalty payments.

WEINTRAUB's representatives shall have the right at all reasonable times during the Term of this Sublicense and for two (2) years after its termination, to examine said books and records and make extracts or copies thereof. In the event it is determined that an understatement of the Net Sales or other error has been made in the computation of amounts due to WEINTRAUB, FDI shall promptly within five (5) days after notice thereof pay to WEINTRAUB any additional amounts due by this reason and, in the event such underpayment is in excess of five (5%) percent, reimburse WEINTRAUB for the reasonable NO must be actual costs reasonable to one may not be reasonable to another costs of the aforesaid examination of the books and records.

7.4  The provisions of section 7.3 shall apply to all selling company entities that sell licensed products on behalf of FDI.

# ARTICLE 8

## TRADEMARK; AUTHORIZATIONS; REPRESENTATIONS,
## WARRANTIES AND COVENANTS

8.1        WEINTRAUB represents, warrants and covenants to FDI that:

(a) WEINTRAUB has the right and authority to give and grant the right and license for the use of the Trademark in the Territory in connection with the design, development, manufacture, marketing, distribution, advertising and sale of the Sublicensed Products by FDI as contemplated by the Sublicense;

(b) WEINTRAUB has no knowledge of any claim, action, suit, proceeding or investigation that has been asserted or threatened in the Territory

11

which might limit the right of FDI fully to exercise the rights that WEINTRAUB grants hereunder;

(c) Neither the execution, delivery nor performance of this Sublicense by WEINTRAUB will, with or without the giving of notice or passage of time or both, conflict with or result in a default or loss of rights under any provision of the Certificate of Incorporation or By-Laws of WEINTRAUB or any other agreement or understanding to which WEINTRAUB is a party or by which it is or any of its properties may be bound.

(d) WEINTRAUB has all requisite power, capacity and authority to enter and perform its obligations under this Sublicense.

(e) This Sublicense has been duly executed and delivered by WEINTRAUB and constitutes the legal, valid and binding obligation of WEINTRAUB enforceable against WEINTRAUB in accordance with its terms, except to the extent that enforcement may be limited by bankruptcy, insolvency or similar laws or judicial decisions affecting creditors' rights.

(f) WEINTRAUB is a corporation duly organized, validly existing and in good standing under the laws of Delaware, and has all requisite power and authority to own, lease and operate its assets, and is duly qualified and authorized to do business as a foreign corporation in good standing in all jurisdictions in which the nature of its business requires such qualification, except where the

failure to be so qualified will not have a material adverse effect on WEINTRAUB or its business.

    (g)  If requested by FDI, WEINTRAUB will provide a list of some of WEINTRAUB's present customers, as of this date, to whom it sells apparel under the Andrew Fezza trademark. This representation does not constitute any representation, warranty or covenant (i) that such customers will purchase Andrew Fezza apparel from WEINTRAUB or FDI in the future; or (ii) that such customers purchase any particular amount of Andrew Fezza merchandise from WEINTRAUB. If the aforesaid representation is untrue, FDI, as its sole and exclusive remedy for such breach of representation may terminate this Agreement on written notice to WEINTRAUB transmitted within thirty (30) days after FDI learns such representation is untrue. Such termination shall not relieve the parties of any obligation incurred prior to termination or during sell-off pursuant to section 13.3 below, or expressly surviving termination.

8.2    Except as otherwise provided herein, or as may otherwise be mutually agreed to by WEINTRAUB and AFL, FDI agrees that no name or names shall be used or co-joined with the Trademark, unless specifically consented to, and then only in the form approved by AFL and WEINTRAUB. Notwithstanding anything to the contrary contained in this License, FDI may affix to the Sublicensed Products, and to the packaging, labeling, tagging or advertising thereof, any mark or logo used to identify it as the manufacturer and/or distributor of the Sublicensed Products.

13

8.3     FDI acknowledges on behalf of itself and its affiliates that, except as
provided herein, AFL is the owner of all right, title and interest in and to the Trademark in the
Territory in any form or embodiment thereof and is also the owner of the goodwill attached or
which shall become attached to the Trademark in connection with the business and goods in
relation to which the same has been, is or shall be used. FDI shall not, at any time, do or suffer
to be done any act or thing which may in any way adversely affect any rights of AFL in and to
the Trademark or any registrations thereof or any applications for registration thereof or which,
directly or indirectly, may reduce the value of the Trademark.

8.4     FDI shall, at WEINTRAUB's reasonable request and at WEINTRAUB's
expense execute or cause to be executed any and all documents, including registered user
agreements, and take any actions reasonably required by WEINTRAUB to confirm AFL's
ownership of all rights in and to the Trademark in the Territory and the respective rights of
WEINTRAUB and FDI pursuant to this Agreement. FDI shall cooperate with WEINTRAUB
and shall, at WEINTRAUB's sole expense, take any actions reasonably requested by
WEINTRAUB in connection with the filing and prosecution of applications in AFL's name to
register the Trademark for Sublicensed Products in the Territory and in connection with the
maintenance and renewal of such registrations as may issue. Upon termination of this
Agreement, FDI shall execute or cause to be executed, any documents reasonably required by
WEINTRAUB to evidence such termination.

8.5     FDI shall ensure that the Trademark in the Territory is used strictly in
compliance with the legal requirements obtaining therein and shall use such markings in
connection therewith as may be required by applicable legal provisions. FDI shall cause to
appear on all Sublicensed Products and on all materials on or in connection with which the

14

Trademark is used, such legends, markings and notices as may reasonably be necessary in order to give appropriate notice of any trademark, trade name or other rights therein or pertaining thereto. FDI shall comply with all applicable laws and regulations in connection with the manufacture, distribution and sale of the Sublicensed Products and all labeling, packaging and advertising relative thereto.

8.6        Whether during the Term of this Sublicense or subsequent to its termination, FDI shall never (a) challenge AFL's ownership of or the validity of the Trademark or any application for registration thereof, or any trademark registration thereof, or any rights of AFL therein, nor (b) challenge the fact that FDI's rights pursuant to this Sublicense are solely those of a Sub licensee.

8.7        Subject to the provisions of Article 13 hereof, upon termination of this Sublicense for any reason whatsoever, FDI shall immediately cause to be discontinued any and all use of the Trademark in connection with products of any kind and shall not use any name or marks similar to the Trademark alone or in combination with any other symbols, in connection with products of any kind, except those products already manufactured, which shall be subject to a sell off period of not more than 90 days. At the time of termination FDI shall deliver to WEINTRAUB a complete and exact detailed list of inventory related to said sell-off in writing. FDI shall still be liable for any royalties due under the contract for disposal of said goods in the event the detailed goods are not sold off by the end of 90 days all labels and markings bearing the trademark shall be removed from the products.

8.8        Upon expiration or termination of this Sublicense, FDI hereby irrevocably appoints WEINTRAUB as its attorney-in-fact to take any necessary steps on FDI's behalf in the

15

Territory to cancel any recordation of the license granted hereunder and to execute any instruments necessary or desirable to confirm termination of FDI's rights under this Agreement.

   8.9   Each party agrees to notify the other party in writing of any infringement of the Trademark in the Territory, of any applications or registrations for the Trademark or marks similar to the Trademark within the Territory, of any suit or proceeding or action of unfair competition involving the Trademark in the Territory, promptly after the first party has notice thereof. The institution and conduct of litigation, the selection of attorneys and the settlement of litigation and claims affecting the Trademark in the Territory shall be entirely within the discretion of AFL and under AFL's control, at AFL's expense. Notwithstanding the foregoing, FDI shall fully cooperate, at the requesting party's ok expense, to the extent reasonably necessary in the institution and conduct of any such litigation and settlement of claims. FDI may designate counsel to represent FDI, at its own expense, and consult with AFL's counsel in connection with any such litigation.

   8.10  FDI represents and warrants to WEINTRAUB that:

     (a) FDI has all requisite power, capacity and authority to enter and perform its obligations under this Sublicense;

     (b) This Sublicense has been duly executed and delivered by FDI and constitutes the legal, valid and binding obligation of FDI, enforceable against FDI in accordance with its terms, except to the extent that enforcement may be limited by bankruptcy, insolvency or similar laws or judicial decisions affecting creditors' rights.

(c) FDI is a corporation duly organized, validly existing and in good standing under the laws of [New York], and has all requisite power and authority to own, lease and operate its assets, and is duly qualified and authorized to do business as a foreign corporation in good standing in all jurisdictions in which the nature of its business requires such qualification, except where the failure to be so qualified will not have a material adverse effect on FDI or its business.

(d)    Neither the execution, delivery nor performance of this Sublicense by FDI will, with or without the giving of notice or passage of time or both, conflict with or result in a default or loss of rights under any provision of the Certificate of Incorporation or By-Laws of FDI or any other agreement or understanding to which FDI is a party or by which it is or any of its properties may be bound.

## ARTICLE 9

### INFRINGEMENT

9.1    WEINTRAUB hereby agrees to indemnify FDI and its affiliates, and any officers and directors thereof, individually, against and save and hold each of them harmless against any and all losses, liability, claims, suits, causes of action, damages and expenses (including reasonable attorneys' fees and expenses) which any of them may incur or for which any of them may become liable or be obligated to pay (i) in connection with any action, claim or proceeding alleging that the use of the Trademark in the Territory in accordance with the terms and

17

conditions of this Sublicense infringes upon the trademark, trade name or other rights of a third party licensee of AFL or WEINTRAUB or (ii) by reason of the material breach or inaccuracy of, or failure to comply with, the representations, warranties and agreements of WEINTRAUB contained herein, FDI shall give WEINTRAUB prompt written notice of any such action, claim or proceeding and WEINTRAUB then shall take any such action necessary to defend such action, claim or proceeding on behalf of FDI. In the event appropriate action is not taken by WEINTRAUB within thirty (30) days after its receipt of notice from FDI, FDI shall have the right to defend such action, claim or proceeding, but settlement thereof may be made without the approval of WEINTRAUB, which approval shall not be unreasonably withheld. In either case, FDI and WEINTRAUB shall keep each other fully advised of all developments, shall provide each other with copies of all documents exchanged in court, and shall cooperate fully with each other in all respects in connection with any such defense as is made. The provisions of this Article 9.1 and WEINTRAUB's obligations hereunder shall survive the expiration or termination of this License.

## ARTICLE 10

### INDEMNITY

10.1    FDI shall indemnify WEINTRAUB and any of its affiliates, and any officers and directors thereof, individually against and save and hold each of them harmless from any and all losses, liability, damages and expenses (including reasonable attorneys' fees and expenses) (collectively, the

18

"Indemnified Losses") which they or any of them incur or for which they or any

of them may become liable or be compelled to pay (i) in any action or claim

which may at any time be asserted by AFL against WEINTRAUB for the failure

of FDI to perform any the covenants, terms or conditions of the License

Agreement, which by reason of the provisions of this Agreement FDI is obligated

to perform; and FDI shall indemnify WEINTRAUB, AFL and FEZZA and any of

their affiliates, and any officers and directors thereof, individually against and

save and hold each of them harmless from any Indemnified Losses which they or

any of them incur or for which they or any of them may become liable or become

compelled to pay (ii) in any action or claim against them or any of them, for or by

reason of any acts, whether of omission or commission, that may be committed by

FDI or any affiliate or any of its or their respective servants, agents or employees,

in connection with its performance of this Sublicense, including, without

limitation, any alleged defects in material or workmanship of any Sublicensed

Products manufactured by or for FDI or any of its affiliates, or (iii) by reason of

the breach or inaccuracy of, or failure to comply with, the representations,

warranties, covenants and agreements of FDI contained herein.

   10.2  WEINTRAUB shall indemnify FDI and any of its

affiliates, and any officers and directors thereof, individually, against and save

and hold each of them harmless from any and all Indemnified Losses which they

or any of them may incur or for which they or any of them may become liable or

be compelled to pay (i) in any action or claim against them or any of them, for or

by reason of any actions, claims or proceedings brought or asserted against FDI

by any third party licensee of WEINTRAUB alleging that (a) the license granted by WEINTRAUB under this Sublicense infringes upon or legally conflicts with the license granted by WEINTRAUB to such third party licensee ("Third Party License"), and/or (b) any Sublicensed Products being produced by FDI as granted under and pursuant to the terms of this Sublicense are goods which should not be produced since these are goods covered by the Third Party License or (ii) relating to the breach or inaccuracy of, or failure to comply with, the representations, warranties, covenants and agreements of WEINTRAUB contained herein.

10.3     FDI and WEINTRAUB shall keep each other fully advised of all developments, shall provide each other with copies of all documents exchanged in court, and shall cooperate fully with each other in all respects in connection with any defense made under this Article 10. No settlement of any claim or action for which FDI may be indemnified hereunder shall be settled without the consent of WEINTRAUB, which consent shall be unreasonably withheld and no settlement of any claim or action for which WEINTRAUB, AFL or FDI may be indemnified hereunder shall be made without the consent of SIERRA, which consent shall not be unreasonably withheld. The provisions of this Article 10 and the obligations of WEINTRAUB and FDI set forth herein shall survive expiration or other termination of this Sublicense.

## ARTICLE 11

### PRODUCT LIABILITY AND INSURANCE

20

11.1      In all countries of the Territory in which the Sublicensed Products are to be sold, FDI shall procure at its sole cost and expense, primary and umbrella policy of products liability insurance at all times during which the Sublicensed Products are being sold, in an amount equal to at least $3,000,000. WEINTRAUB and FEZZA shall be included as additional insured's on such policy at no expense to WEINTRAUB or FEZZA.

## ARTICLE 12

## DEFAULT

12.1      Each party shall be entitled to terminate this Sublicense by written notice sent to the other party should one party be in material breach of any of its obligations set forth in this Sublicense and if said material breach is not cured within thirty (30) days following receipt of a notice to do so. A material breach shall include, but not limited to, any failure on FDI's part to pay WEINTRAUB any monies due under this Agreement. For purposes of this Article 12.1, a material breach of any obligations or agreements of a sublicense of FDI that affects the Trademark in any way or AFL shall be deemed a material breach by FDI(subject to cure period as provided above).

12.2      Notwithstanding the foregoing, WEINTRAUB may terminate this Sublicense if Net Sales of Sublicensed Products shall fail to equal or exceed (1) in the First Year, Two Million Five Hundred Thousand  Dollars ($2,500,000), (2) in the second Contract Year, Three Million Dollars ($3,000,000), (3) in the third Contract Year, Three Million Five Hundred  Dollars

21

($3,500,000) (each such annual minimum, "Minimum Net Sales"); provided however, if FDI forfeits all rights with respect to a Product Category pursuant to Section 13.1 hereof, then the Minimum Net Sales for each year shall be reduced by the amount of the relevant Minimum Product Category Sales (as defined) for each corresponding year remaining in the Term.

12.3     Notwithstanding any termination of this Sublicense for any reason, no amount previously paid to WEINTRAUB, including specifically but without limitation any Royalty payment to WEINTRAUB, shall be required to be repaid by WEINTRAUB.  The provisions of this Article 12.2 shall survive any termination of this Sublicense.

ARTICLE 13

TERMINATION

13.1     Upon the termination of the License for any reason, this Sublicense shall terminate concurrently; provided that, if the License terminates by reason of WEINTRAUB's default hereunder, all rights and obligations of WEINTRAUB under this Sublicense shall automatically be assigned to and assumed by AFL and FEZZA and the Sublicense shall remain in effect among AFL, FEZZA and FDI for the duration of the Term.

13.2     Upon the termination of the License for any reason, this Sublicense shall terminate concurrently; provided that, if the License terminates

22

by reason of WEINTRAUB's default there under, all rights and obligations of WEINTRAUB under this Sublicense shall automatically be assigned to and assumed by AFL and FEZZA and the Sublicense shall remain in effect among AFL, FEZZA and FDI for the duration of the Term.

13.3    Upon the termination of this Sublicense whether by the expiration of the Term hereof, or cancellation, or for any cause whatsoever, the license herein granted and all rights of FDI to use the Trademark forthwith shall cease and terminate. Upon such termination, FDI shall immediately discontinue and abandon the use of the Trademark, shall cease all deliveries of the Sublicensed Products and shall cease to represent or advertise that FDI is in any way connected with WEINTRAUB. Notwithstanding such termination, FDI shall have the right for a period of one hundred eighty (180) days following termination to fulfill and make delivery of all orders received by it prior to such termination, and for such purpose, to use the Trademark in the manner set forth in this Sublicense. Not withstanding the last sentence or anything else contained in this Agreement, FDI shall have no sell off rights if this agreement has been terminated due to FDI's failure to make payments due under this agreement.

13.4    Upon any termination of this Sublicense, FDI shall promptly deliver to WEINTRAUB a complete and accurate schedule of Inventory. Such schedule shall be prepared as of the close of business on the date of such termination and shall reflect the cost of each of such items. WEINTRAUB thereupon shall have the option, exercisable by notice in writing delivered to FDI within fifteen (15) days after its receipt of the complete

23

Inventory schedule, to purchase all or any part of the Inventory for an amount equal to the wholesale price of the Inventory being purchased. WEINTRAUB shall also have the right to purchase all tags, labels, cartons, packaging, wrapping or advertising materials, as well as raw materials relating exclusively to the Sublicensed Products, at the cost of such items carried on FDI's books. In the event such notice is sent by WEINTRAUB, FDI shall deliver to WEINTRAUB or its designer all of the Inventory referred to therein within fifteen (15) days after WEINTRAUB's said notice. WEINTRAUB shall pay FDI for such Inventory upon such receipt of Inventory.

13.5     In the event WEINTRAUB does not exercise its option to purchase the Inventory, FDI shall have the right to sell and dispose of the Inventory (a) under the Trademark for a period of six (6) months from and after the date of termination, and (b) thereafter until the Inventory is depleted provided that the Trademark and all other means of identifying the Sublicensed Products with the Trademarks or with FEZZA or WEINTRAUB are removed there from and from the tags, labels, packaging and the like used in connection therewith and that neither the Trademark nor any other identification is used in connection with the sale, advertising or promotion thereof. It is understood that FDI shall pay the Percentage Royalty relating to such sales within thirty (30) days after the end of each season in which sales under the Trademark take place.

13.6     WEINTRAUB may, in its sole discretion, at any time after the non-renewal or termination of this Sublicense, enter into such arrangements as it desires pursuant to which Sublicensed Products may be shown, advertised,

24

distributed or sold in the Territory by it or by any duly authorized third party provided only that no shipment of Sublicensed Products shall be permitted prior to the date of termination of this Sublicense and WEINTRAUB shall not advertise in any way that it has entered into such arrangements prior to the date of termination of this Sublicense.

## ARTICLE 14

### FORCE MAJEURE

14.1    Neither party hereto shall be liable to the other for delay in any performance or for the failure to render any performance under this License when such delay or failure is by reason of any act of God, earthquake, epidemic, explosion, lockout, boycott, strike, riot, war or armed conflict (whether or not there has been an official declaration of war or official statement as to the existence of a state of war), act of a public enemy or the material inability of FDI to import the Sublicensed Products into any country within the Territory which materially affects the business of selling the Sublicensed Products as a whole. The party claiming to be so affected shall give notice to the other party promptly after it learns of the occurrence of said event and of the adverse results thereof. Such notice shall set forth the nature and extent of the event.  The delay or failure shall not be excused unless such notice is so given.  Notwithstanding any other provision of this Sublicense, either party may terminate this License if the other

party is unable to perform its obligations hereunder for a period of six (6) months or longer by reason of said event.

## ARTICLE 15

### ARBITRATION - APPLICABLE LAW

15.1     Any and all disputes, controversies and claims arising out of or relating to this Agreement or concerning the respective rights or obligations of the parties hereto shall be settled and determined by arbitration in New York City before a panel of three (3) arbitrators pursuant to the Commercial Rules then employed by the American Arbitration Association or before one (1) arbitrator if less than $50,000 is involved.  The arbitrators shall have the power to award damages, injunctive relief and reasonable attorneys' fees and expenses to any party in such arbitration.  Anything to the contrary herein notwithstanding, a temporary restraining order or injunction may be obtained by WEINTRAUB from a court of appropriate jurisdiction pending the determination of any controversy pursuant to the arbitration provisions hereof.  The arbitrator and/or court shall award to the prevailing party the reasonable attorneys fees and costs it incurred.

15.2     This Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to agreements made and to be performed in said state, and without regard to its principles of conflict of laws.

26

ARTICLE 16

CONFIDENTIALITY AND RELEASE OF INFORMATION

16.1      The Parties hereto each acknowledge that all information relating to the subject matter hereof and to the business and operations of the other which the other parties learn or have learned during or prior to the date of this Agreement, are valuable property of the relevant party. The parties acknowledge the need to preserve the confidentiality and secrecy of all such information and agree that none of them shall use or disclose same, except as provided herein, and all the parties shall take all necessary steps to preserve in all respects such confidentiality and secrecy. The parties shall take any necessary steps to ensure that use by them or by their affiliates, sub licensees, contractors and suppliers, if any, of such information (which use shall be solely as necessary for, and in connection with, the marketing, sale, distribution, advertising or promotion of the Sublicensed Products) shall preserve in all respects such confidentiality and secrecy. The provisions of this Article 16.1 and the parties obligations hereunder shall survive the expiration or termination of this Agreement.

16.2      The parties shall agree on the text and timing of any press releases or other public disclosures relating to the subject matter of this Agreement prior to their release.

ARTICLE 17

## INDEPENDENCE OF THE PARTIES

17.1     It is understood that all parties to this Sublicense shall be independent of the other and that no party hereto shall have any right or authority to bind any other party except as provided herein.

ARTICLE 18

## ENTIRE UNDERSTANDING; NO WAIVER

18.1     This Sublicense constitutes the complete understanding among the parties with respect to the subject matter hereof, supersedes all prior oral or written understandings and agreements relating thereto and shall not be modified, amended or terminated except as provided herein or by written instrument signed by the relevant parties hereto.  None of the parties is acting in reliance upon any representation or guarantee of the others besides those explicitly provided for in this Agreement.

18.2     The failure by any party to object to any breach of this Agreement, or to enforce at any time or for any period any provision of this Agreement, shall not constitute a waiver of such provision or of such party's rights or remedies, or a consent to the modification of the Agreement.

28

## ARTICLE 19

## ASSIGNMENT

19.1    Except as otherwise provided herein, this Sublicense is personal as to the parties and none of the parties shall assign or transfer this Sublicense, in whole or in part, to any third party without the written consent of the other parties hereto.  Notwithstanding the foregoing:  WEINTRAUB shall have the right to transfer its rights under this Sublicense or any portion thereof to any subsidiary corporation controlled by WEINTRAUB or any successor to substantially all of the assets now held by WEINTRAUB.  In no event shall any such transfers or assignments relieve the assignor of its obligations and liabilities hereunder.

## ARTICLE 20

## SUCCESSORS AND ASSIGNS

20.1    This Sublicense shall be binding upon, and shall inure to the benefit of each of the parties hereto and their respective permitted successors and e 'signs.

## ARTICLE 21

## PARTIAL INVALIDITY

29

21.1     If any term, covenant or provision contained herein shall be invalid or illegal, such invalidity or illegality shall not impair, invalidate or nullify the other provisions of this Agreement.

ARTICLE 22

NOTICES

22.1     All notices or other communications pursuant to this Agreement shall be in writing and shall be deemed valid and sufficient if delivered by personal service or overnight courier or if dispatched by registered mail, postage prepaid, in any post office, or if dispatched by telex or telefax, promptly confirmed by letter dispatched as above provided, addressed as follows:

If to WEINTRAUB:

> George Weintraub & Sons, Inc.
> 1350 Avenue of the Americas
> New York, New York  10019
>
> Attention:  Jeff Weintraub

If to AFL or FEZZA:

> Andrew Fezza Ltd.
> 300 Park Avenue, 17th Floor
> New York, New York  10022
>
> Attention: Mr. Andrew Fezza

30

If to Fiesta Distributors Inc:

      Fiesta Distributors Inc.
      221 N. Kansas
      Suite 1700
      El Paso Texas, 77701

      Attention: Tomas Bello

Copy to:

      Ricardo Fernández
      221 N. Kansas
      Suite 1700
      El Paso Texas, 77701

A party hereto may change its address by notice to the other in the manner set forth above. Notices and other communications rendered as herein provided shall be deemed to have been given on the day on which personally served or sent by telex or telefax or, if sent by overnight courier, on the second (2nd) day after being posted, or if sent by registered mail, on the seventh (7th) day after being posted, or the date of actual receipt, whichever date is the earlier.

## ARTICLE 23

### FEES

23.1      Any agent's commission with respect to Sublicensed Products payable to Stephen Wayne and Associates USA, Inc. shall be the responsibility of WEINTRAUB.

31

## ARTICLE 24

### HEADINGS

24.1     The headings herein are for convenience only and shall not control or affect the meaning or construction of any provision of this Agreement.

## ARTICLE 25

### EXHIBITS

25.1     The attached exhibits shall form a part of this License and are hereby incorporated into this Agreement by reference.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement the day and year first above written.

GEORGE WEINTRAUB & SONS, INC.

By:_____

JEFF WEINTRAUB

FIESTA DISTRIBUTORS INC.

By:_____

TOMAS BELLO

33

## CONSENT

The undersigned, ANDREW FEZZA, LTD. and ANDREW FEZZA, having taken cognizance of the foregoing Sublicense Agreement, hereby consents to the said Sublicense Agreement.

DATED as of the 24 day of Oct, 2005

ANDREW FEZZA, LTD.

ANDREW FEZZA

34

EXHIBIT 1.9A

Sublicensed Products

| Product Categories | Retail Price Points | Market Segment | Distribution |
|---|---|---|---|
| 1. Casual pants<br>2. Jeans | | | |

Exhibit B

# AMERICAN ARBITRATION ASSOCIATION

## COMMERCIAL ARBITRATION RULES

### DEMAND FOR ARBITRATION

Date:  June 14, 2006

**TO**:  FIESTA DISTRIBUTORS INC.
221 N. KANSAS, SUITE 1700
EL PASO, TEXAS 77701

Named Claimant, party to an agreement dated as of September 1, 2005 (the "Agreement"), with FIESTA DISTRIBUTORS INC. ("Respondent"), providing for arbitration, hereby demands arbitration thereunder.

> "15.1 Any and all disputes, controversies and claims arising out of or relating to this Agreement or concerning the respective rights or obligations of the parties hereto shall be settled and determined by arbitration in New York City before a panel of three (3) arbitrators pursuant to the Commercial Rules then employed by the American Arbitration Association on or before one (1) arbitrator if less than $50,000 is involved. The arbitrators shall have the power to award damages, injunctive relief and reasonable attorneys' fees and expenses to any party in such arbitration. Anything to the contrary herein notwithstanding, a temporary restraining order or injunction may be obtained by WEINTRAUB from a court of appropriate jurisdiction pending the determination of any controversy pursuant to the arbitration provisions hereof. The arbitrator and/or court shall award to the prevailing party the reasonable attorneys fees and costs it incurred".

## NATURE OF DISPUTE:
Respondent, as licensee, pursuant to Agreement dated as of September 1, 2005, has breached the said Agreement by, among other things:

(a)  Failing to pay the Minimum Guaranteed Royalty payments as required by Article 7.1 of the Agreement;

(b)  Failing to perform its obligations pursuant to the Agreement in accordance with Article 5 of said Agreement.

122910.1

## CLAIM OR RELIEF SOUGHT:

(a)    Payment of all sums due to Claimant, including but not limited to the Guaranteed Royalty Payments for the first, second and third contract year, as more fully described in the Agreement.

(b)    Accounting of Respondent's sales of all Products.

(c)    Any and all damages, consequential or otherwise, caused by the breach of the aforesaid agreement by the Respondent, including but not limited to the acceleration of all minimum annual payments as set forth in the License Agreement.

(d)    Legal Fees, expenses, disbursements and interest incurred by Claimant in connection with this proceeding.

(e)    Determination declaring that the agreement dated September 1, 2005 between Claimant, as Licensor and Respondent, as Licensee is terminated as a result of Respondent's breach of its obligations pursuant to said agreement.

(f)    Injunctive relief prohibiting Respondent from unlawfully violating the terms and conditions of the License Agreement.

(g)    Such other, further or different relief as the Arbitrators may deem appropriate.

## TYPE OF BUSINESS:

**Claimant:**    Licensor of trademarks utilized in connection with apparel, accessories, and other fashion-related products.

**Respondent:** Manufacturer and distributor of apparel.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Section 7503(c) of the Civil Practice Law & Rules, unless within twenty days after service of this Demand for Arbitration you apply to stay the arbitration herein, you shall thereafter be precluded from objecting that a valid agreement was not made or has not been complied with and from asserting in court the bar of a limitation of time.

**HEARING LOCALE REQUESTED:**   New York, New York

You are hereby notified that copies of our arbitration agreement and of this demand are being filed with the American Arbitration Association at its New York Regional Office, with the request that it commence the administration of the arbitration.    Under Section 7 of the Commercial Arbitration Rules, you may file an answering statement within ten days after notice from the Administrator.

Signed: _____          Title:  Attorney for Claimant

**Name of Claimant:**                        GEORGE WEINTRAUB AND SONS, INC.

Address (to be used in connection         c/o JAFFE, ROSS & LIGHT LLP
with this case:)                          880 Third Avenue - 15 Fl.
                                          New York, New York 10022
                                          (212) 751-1700

**Name of Attorney:**                        EDWARD JAFFE, ESQ.
                                          JAFFE, ROSS & LIGHT LLP
                                          880 Third Avenue
                                          New York, N.Y. 10022
                                          (212)  751-1700

122910.1                                  3

## AFFIDAVIT OF SERVICE BY CERTIFIED MAIL

STATE OF NEW YORK          )
COUNTY OF NEW YORK         ) ss.:

     JOAN ALATRISTE, being duly sworn, deposes and says that deponent is over 18 years of age and resides at 120 Debs Place, Bronx, New York 10475.

     That on June 14, 2006, the undersigned served the within **DEMAND FOR ARBITRATION** by CERTIFIED MAIL, RETURN RECEIPT REQUESTED, on the following:

> FIESTA DISTRIBUTORS INC.
> 221 N. Kansas - Suite 1700
> El Paso, TX 77701
>
>     -and-
>
> RICARDO FERNANDEZ
> 221 N. Kansas - Suite 1700
> El Paso, TX 77701

by depositing a true copy of same, enclosed in a certified mail, postpaid, properly addressed wrapper, in an official depository of the United States Postal Service in New York State.

JOAN ALATRISTE

Sworn to before me
June 14, 2006

Notary Public

B. EDWARD JAFFE
Notary Public, State of New York
No. 31-7065875
Qualified in New York County
Commission Expires Nov. 30, 2006

123562.1

**Exhibit C**

 **American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Northeast Case Management Center*
Catherine Shanks
Vice President
Christopher Fracassa, Yvonne Nelson
Assistant Vice Presidents

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

July 31, 2006

VIA FACSIMILE
Edward A. Jaffe
Jaffe, Ross & Light LLP
880 Third Avenue, Ninth Floor
New York, NY  10022

VIA US MAIL
Ricardo Fernandez
Fiesta Distributors, Inc.
221 N. Kansas - Suite 1700
El Paso, TX  77701

Re: 13 133 01716 06
    George Weintraub & Sons, Inc.
    and
    Fiesta Distributors, Inc.

Dear Parties:

This will acknowledge receipt on July 27, 2006, of a Demand for Arbitration dated July 26, 2006, of a controversy arising out of a contract between the above-captioned parties, containing a clause providing for administration by this Association. We understand that a copy was sent to Respondent. A copy of our Commercial Arbitration Rules and Mediation Procedures, as amended and in effect September 15, 2005, may be obtained from our website at www.adr.org.

If you would like a printed copy of the applicable rules, please contact the undersigned.

In accordance with the Rules, if Respondent does not answer on or before August 15 2006, we will assume that the claim is denied. If Respondent wishes to counterclaim, file the appropriate number of copies, together with the administrative fee, to the attention of the undersigned. A copy should be directly sent to Claimant.

We note the parties' agreement stipulates the locale as New York, New York.

In the interest of saving costs for the parties and expediting the above-captioned matter, the parties are requested to waive the provision of their arbitration clause requiring the appointment of three arbitrators. We ask the parties to confirm in writing on or before August 15, 2006 if you are in agreement to proceed before one arbitrator in this matter.

This will confirm an Administrative Conference is scheduled on August 8, 2006 at 4:00 PM ET via conference call. The Association will initiate this call.

The purpose of the administrative conference is to assist the Association in administering your case efficiently and expeditiously. Please be prepared to discuss the following:

   a.  estimates on the expected duration of the case;
   b.  number of arbitrators/party-appointed arbitrator provision;
   c.  method of appointment of arbitrators, if applicable;
   d.  your views on the qualifications of the arbitrators to be proposed;
   e.  the possibility of submitting this dispute to mediation;

Enclosed is a Checklist for Conflicts to list those witnesses you expect to present, as well as any persons or entities with an interest in these proceedings. The Conflicts Checklist is due within fifteen days from the date of this letter. The parties are to exchange copies of all correspondence except this checklist and the arbitrator list.

The Association will make maximum use of fax machines when communicating in writing, and request that the parties do the same. If you have not provided us with your fax number, we ask that you do so at this time. If a party does not provide us with their fax number, then that party will have to rely on receiving correspondence via regular mail.

Parties will not send copies of documents being exchanged between the parties to the Association, such as discovery, unless they are being referred to the arbitrator for a determination. These documents will be returned to you if we receive them.

The Association has a strict policy regarding requests for extensions. If you need to extend any deadline during the course of these proceedings, please try to obtain the other party's agreement prior to contacting the AAA. Without the consent of the parties, case managers only have the authority to grant one extension per deadline, provided the request is reasonable and necessary. Untimely filings will not be considered by the Association.

This case will be administered by facilitating the exchange of appropriate written documents through the AAA. To ensure the proper handling of all case-related documents, the parties are asked not to submit correspondence directly to the arbitrator. Correspondence should be submitted to the undersigned for transmittal to the arbitrator, copying the other party.

The Association will require advance deposits once the arbitrator is appointed. These deposits are calculated on the number of days the parties have suggested will be necessary, in addition to the pre and post hearing time that the arbitrator may charge pursuant to the arbitrator's resume.

Additionally, the parties may desire to mediate this case prior to an arbitration hearing. Mediation is a private, non-binding process under which the parties submit their dispute to a third-party neutral. The mediator may suggest ways of resolving the dispute, but may not impose a settlement on the parties; the parties attempt to negotiate their own settlement agreement. Please contact the undersigned for further details regarding mediation.

As a service to our users, you may charge the administrative fee and deposit for arbitrator fees and expenses to your credit card. If you desire to do so, please complete the enclosed charge authorization and return it to us.

We invite the parties to visit our website to learn more about how to file and manage your cases online. As part of our administrative service, AAA's WebFile allows parties to perform a variety of case related activities, including:

- File additional claims
- Complete the Checklist for Conflicts form
- View invoices and submit payment
- Share and manage documents
- Strike and rank listed neutrals
- Review case status

AAA WebFile provides flexibility because it allows you to work online as your schedule permits - day or night. Cases originally filed in the traditional offline manner can also be viewed and managed online.

In closing we wish to remind the parties that the AAA has a refund schedule in the administrative fee section of the Rules. After 60 days or the appointment of the arbitrator the filing fees are non-refundable. If the parties enter settlement negotiations at any time after the AAA has opened its file, you should take into consideration the refund schedule in the Rules. In accordance with the administrative fee schedule, the Association charges a Case Service Fee when the hearing on the merits is scheduled. The Case Service Fee is the balance of the filing fee. It is refundable if the hearing on the merits is cancelled and the Association is notified at least 24 hours prior to the hearing. The AAA will only refund filing fees as outlined in the Rules and does not refund neutral costs incurred when parties settle their dispute or withdraw their claims. We encourage parties to resolve their disputes as amicably as possible and this notice is just to alert you to this issue so that it doesn't become a concern in the future.

Please feel free to call if you have any questions. We look forward to assisting you in this matter.

Sincerely,

Lisa Bellegarde, for Michaela E. Gaudette
Case Manager
401 431 4795
Gaudettem@adr.org

*Supervisor Information: Tracey Trudel, 401 431 4701, TrudelT@adr.org*

Encl.

# AMERICAN ARBITRATION ASSOCIATION
## CHECKLIST FOR CONFLICTS

In the Matter of the Arbitration between:

Re: 13 133 01716 06
    George Weintraub & Sons, Inc.
    and
    Fiesta Distributors, Inc.

CASE MANAGER: Michaela E. Gaudette
DATE: July 31, 2006

To avoid the possibility of a last-minute disclosure and/or disqualification of the arbitrator pursuant to the rules, we must advise the arbitrator of the names of all persons, firms, companies or other entities involved in this matter. Please list below all interested parties in this case, including, but not limited to, witnesses, consultants, and attorneys. In order to avoid conflicts of interest, parties are requested to also list subsidiary and other related entities. This form will only be used as a list for conflicts, not a preliminary or final witness list. Please note that the AAA will not divulge this information to the opposing party, and the parties are not required to exchange this list. This form will, however, be submitted to the arbitrator, together with the filing papers. You should be aware that arbitrators will need to divulge any relevant information in order to make appropriate and necessary disclosures in accordance with the applicable arbitration rules.

For your convenience, this form may be completed online.

NAME                                AFFILIATION                                ADDRESS

DATED: _____    PARTY: _____
                                                    Please Print

# CHARGE CARD AUTHORIZATION

Please Print or Type

Case Number:

Party Name: _____

_____

_____

Other:

| INVOICE # | INVOICE DATE | AMOUNT |
|-----------|--------------|--------|
|           |              |        |
|           |              |        |
|           |              |        |
|           |              |        |
|           |              |        |

___VISA   ___MASTERCARD   ___AMEX

Amount Charged:

Account Holder
Name: _____

Card No: _____   Exp Date: _____

_____       _____
        Signature                        Date

Submitted by_____   Date: _____

For Central Office Use

Processed By: _____ Date: _____

Approval Code: _____

**Exhibit D**

# JAFFE, ROSS & LIGHT LLP

## ATTORNEYS & COUNSELLORS AT LAW

880 THIRD AVENUE    NEW YORK, NEW YORK 10022    (212) 751-1700    FACSIMILE (212) 751-2235

August 3, 2006

**VIA FACSIMILE**
(401) 435-6529

American Arbitration Association
Northeast Case Management Center
950 Warren Avenue
East Providence RI 02914

Attention:    Melanie Rutherford
              Case Manager

         Re:    **13 459 01406 06**
                **George Weintraub and Sons, Inc.**
                **and Fiesta Distributors, Inc.**

Dear Ms. Gaudette:

We acknowledge receipt of Lisa Bellegarde's letter of July 31st.

This will confirm that we waive the requirement for the appointment of three arbitrators.

This will further confirm that we will be available for the administrative conference call on August 8th at 4:00 P.M.

                              Very truly yours,


EJ:ja                         EDWARD JAFFE


cc:    Mr. Andrew Fezza
       Mr. Steven Rosenshein
       George Weintraub & Sons, Inc.

cc:    Mr. Ricardo Fernandez


124651.1

**Exhibit E**

 **American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Northeast Case Management Center*
Catherine Shanks
Vice President
Christopher Fracassa, Yvonne L. Baglini
Assistant Vice Presidents

February 20, 2007

950 Warren Avenue, East Providence, RI 02914
telephone: 866-293-4053 facsimile: 401-435-6529
internet: http://www.adr.org/

VIA FACSIMILE
Edward A. Jaffe
Jaffe, Ross & Light LLP
880 Third Avenue, Ninth Floor
New York, NY 10022

VIA MAIL
Ricardo Fernandez
Fiesta Distributors, Inc.
221 N. Kansas - Suite 1700
El Paso, TX 77701

Re: 13 133 01716 06
    George Weintraub & Sons, Inc.
    and
    Fiesta Distributors, Inc.

Dear Parties:

This will confirm a preliminary hearing in the above matter was held on February 14, 2007, and the following arrangements were made:

> The Claimant will submit in writing to the Association any documents pertaining to the arbitration, including a statement of facts together with any briefs, written arguments or other evidence they wish to submit on or before March 9, 2007.
>
> Respondent may file one written reply to such statements and proofs on or before March 30, 2007.
>
> Failure of any party to make such a reply within the specified period of time is deemed to be a waiver of its right to reply.
>
> The arbitrator shall examine the documents and request further evidence from any party(s), if necessary.
>
> The time period for rendering the award will be within thirty days of the date the arbitrator declares the proceedings closed

This order shall continue in effect unless and until amended by subsequent order of the arbitrator.

Please send copies of all documents pertaining to the arbitration to the other party(s) at the same time they are submitted to the Association.

Thank you for your cooperation, and please do not hesitate to contact the undersigned should you have a question.

Sincerely,

Melanie Rutherford
Case Manager
401 431 4715
Rutherfordm@adr.org

*Supervisor Information: Tracey Trudel, 401 431 4701, TrudelT@adr.org*

cc:     Steven Skulnik, Esq.

**Exhibit F**

# AMERICAN ARBITRATION ASSOCIATION
## Commercial Arbitration Tribunal

---

In the Matter of the Arbitration between

Re: 13 133 01716 06

GEORGE WEINTRAUB AND SONS, INC.,

Claimant,

and -

FIESTA DISTRIBUTORS INC.,

Respondent.

---

## AWARD OF ARBITRATOR

**I, THE UNDERSIGNED ARBITRATOR**, having been designated in accordance with the arbitration agreement contained in the License Agreement dated as of September 1, 2005 ("License Agreement") between the parties, and having been duly sworn, and having duly heard the proofs and allegations of the Claimant, and Claimant having made a motion to amend its claim in its Arbitration Statement submitted on March 9, 2007 to seek damages in the amount of $670,000.00 (with the amounts payable during the second and third contract years should be discounted to its present value at a rate determined to be fair and reasonable by the Arbitrator), and the arbitrator having agreed to consider same and Respondent, after due notice, having failed to appear, plead or submit evidence, do hereby, **AWARD**, as follows:

1. Claimant's request for damages is granted to the extent that Respondent shall pay to Claimant the following sums:

  a. For the first Contract Year, the principal sum of One Hundred Fifty Thousand Dollars and Zero Cents ($150,000.00) plus interest from the dates on which revenue would have been received pursuant to the Agreement. Interest through March 31, 2007 totals $12,957.00 and shall continue to accrue thereafter at the rate of nine percent per annum on the principal sum of $150,000.00 until paid.

  b. For the Second Contract Year, the principal sum of Two Hundred Twenty Thousand One Hundred Eighty Three Dollars and Zero Cents ($220,183.00) representing the discounted present value of the minimum royalties for that contract year as at

Re: 13 133 01716 06

GEORGE WEINTRAUB AND SONS, INC.,

Claimant,

and -

FIESTA DISTRIBUTORS INC.,

*Respondent.*

March 31,2007. Interest shall accrue thereafter at the rate of nine percent per annum on the principal sum of $220,183.00 until paid.

      c.     For the Third Contract Year, the principal sum of Two Hundred Thirty Five Thousand Six Hundred Seventy Dollars and Zero Cents ($235,670.00) representing the discounted present value of the minimum royalties for that contract year as at March 31,2007. Interest shall accrue thereafter at the rate of nine percent per annum on the principal sum of $235,670.00 until paid.

      d.     In summary, Respondents shall pay to Claimant the total principal sum of Six Hundred Five Thousand Eight Hundred Fifty Three Dollars and Zero Cents ($605,853.00) for the three Contract Years with interest through March 31, 2007 of $12,957.00, and with interest accruing thereafter at the rate of nine percent per annum on the principal sum of $605,853.00 until paid

    2.    Claimant is awarded a declaration that the License Agreement was terminated effective April 24, 2006.

    3.    Respondent is liable to Claimant for attorneys' fees as contemplated by the arbitration clause in Section 15.1 of the License Agreement in an amount determined to be reasonable by the Arbitrator. Claimant has not submitted any proof regarding its actual attorneys' fees incurred to date. I will therefore estimate the appropriate hourly rate for an attorney to prosecute a case of this complexity at $300 per hour and the time necessary to prepare the documents submitted in this matter at ten hours. Therefore Respondent shall pay to Claimant the additional sum of $3,000.00 representing reasonable attorneys' fees.

Re: 13 133 01716 06

GEORGE WEINTRAUB AND SONS, INC.,

Claimant,

and -

FIESTA DISTRIBUTORS INC.,

*Respondent.*

The administrative fees of the American Arbitration Association totaling $6,000.00 and the compensation of the arbitrator totaling $1,406.25 shall be borne entirely by Respondent. Therefore, Respondent shall reimburse Claimant the sum of $6,703.13, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by Claimant.

This Award is in full settlement of all claims submitted in this Arbitration. All claims not expressly granted herein are hereby denied in their entirety.

April 10, 2007
    Date                                          Steven Skulnik

I, Steven Skulnik, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

April 10, 2007
    Date                                          Steven Skulnik

131007 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GEORGE WEINTRAUB & SONS, INC.,

Petitioner,

-against-

FIESTA DISTRIBUTORS, INC.,

Respondent.

NOTICE OF PETITION TO CONFIRM ARBITRATOR'S
AWARD

JAFFE, ROSS & LIGHT LLP
Attorneys for Petitioner
Burgess Steel LLC
Office and Post Office Address
880 Third Avenue
NEW YORK, N.Y. 10022
(212) 751-1700

To:
Attorney(s) for Respondent

Service of a copy of the within ............. is hereby admitted.

Dated,

Attorney(s) for .............

---

═══ NOTICE OF ENTRY ═══

Sir: Please take notice that the within is a (certified) true copy of a duly entered in the office of the clerk of the within named court on

Dated,

Yours, etc.,

JAFFE, ROSS & LIGHT LLP

Attorneys for Petitioner

Office and Post Office Address
880 Third Avenue
NEW YORK, N.Y. 10022

To:

Attorney(s) for

═══ NOTICE OF SETTLEMENT ═══

Sir: Please take notice that an order

of which the within is a true copy will be presented for settlement to the Hon.

one of the judges of the within named Court, at

on
at          _M.
Dated:

Yours, etc.,

JAFFE, ROSS & LIGHT LLP

Attorneys for

Office and Post Office Address
880 Third Avenue
NEW YORK, N.Y. 10022

To:

Attorneys for